O

# United States District Court
# Central District of California

| | |
|---|---|
| SOUTH MILL MUSHROOM, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>V.I.P. MARKETING, INC., et al.,<br><br>    Defendants. | Case No. 2:21-cv-07200-ODW (Ex)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [12] AND MOTION FOR PRELIMINARY INJUNCTION [14]** |

## I. INTRODUCTION & BACKGROUND

On September 8, 2021, Plaintiff South Mill Mushroom, LLC ("South Mill") initiated this lawsuit against Defendants V.I.P. Marketing, Inc. ("V.I.P."); Christopher Martin; Jesse Martin; and Martin Produce, Inc. South Mill sells mushrooms, and it asserts a breach of contract claim for Defendants' failure to pay a total of $494,079.65.

Because this is a suit for interstate sale of produce, the Perishable Agricultural Commodities Act of 1930 ("PACA") applies, and South Mill's remaining seven claims arise under PACA. Under PACA, when a seller sells qualifying produce to a buyer, a trust arises by operation of law, under which the buyer is the trustee of the produce (along with all proceeds derived therefrom) and the seller is the beneficiary. The trust lasts until the buyer renders payment. 7 U.S.C. § 499(e)(c)(2); 49 Fed. Reg.

at 45738.  "PACA trusts are governed by traditional principles of trust law," *In re Country Harvest Buffet Rests., Inc.*, 245 B.R. 650, 653 (B.A.P. 9th Cir. 2000), and they offer produce sellers "a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables," 49 Fed. Reg. at 45737, 1984 WL 134994.

South Mill claims that V.I.P. has not paid for its orders and is therefore the trustee of a PACA trust.  On September 9, 2021, South Mill filed an ex parte application for a Temporary Restraining Order ("TRO") seeking an injunction barring Defendants from "dissipating the trust assets," that is, from selling the mushrooms or from using or conveying any proceeds from sale of the mushrooms, until Defendants pay South Mill the monies owed.  7 C.F.R. § 46.46(a)(2) ("'Dissipation' means any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."); (Appl. TRO, ECF No. 12.)  South Mill also filed a related Motion for Preliminary Injunction.  (Mot. Prelim. Inj., ECF No. 14.)  For the reasons explained below, the Court **DENIES** South Mill's TRO Application and Motion for Preliminary Injunction.

## II.     LEGAL STANDARD

A temporary restraining order is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *see Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (emphasizing plaintiffs "face a difficult task in proving that they are entitled to this 'extraordinary remedy'").  The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### III. DISCUSSION

Between June 2021 and August 2021, South Mill and V.I.P. entered into contracts for the sale of Pennsylvania mushrooms. (Decl. of Anecia Wilson ("Wilson Decl.") ¶¶ 7–8, ECF No. 12-2.) South Mill shipped the mushrooms, and V.I.P. received them and now owes a balance of $494,079.65. (*Id.* ¶¶ 9, 16.) Although South Mill may have a contract claim, it is not entitled to an immediate injunction enforcing its rights in its PACA trust because it has failed to show irreparable harm under the heightened standard that applies when the defendant has no notice.

**A. Ex Parte Requirements; No-Notice Requirements**

A party seeking ex parte relief must establish: (1) why a motion cannot be calendared in a regular manner; (2) that the requesting party will be irreparably prejudiced if a motion is heard in accord with regular procedures; and (3) that the requesting party is without fault in creating the crisis that requires ex parte relief or that the crisis was due to excusable neglect. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). "In other words, [an ex parte

application] must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Id.*

"Where notice could have been given to the adverse party," there exists only "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Thus, a party applying for ex parte relief must make "reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application" and must "advise the Court in writing and under oath of efforts to contact other counsel and whether other counsel, after such advice, opposes the application." C.D. Cal. L.R. 7-19.1. This notice requirement may be waived only "[i]f the judge to whom the application is made finds that the interest of justice requires that the ex parte application be heard without notice (which in the instance of a TRO means that the requisite showing under [Rule] 65(b) has been made)." C.D. Cal. L.R. 7-19.2.

Relatedly, Rule 65(b)(1) authorizes a court to issue a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). These restrictions are "stringent," and the "circumstances justifying the issuance of an ex parte order are extremely limited." *Reno Air Racing*, 452 F.3d at 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).

Here, the declaration of counsel submitted with the Application fails to address why the Court should not require notice to Defendants. (*See generally* Wilson Decl.)

This is sufficient independent grounds for denying the application. Fed. R. Civ. P. 65(b)(1)(B); C.D. Cal. L.R. 7-19.2.

Moreover, the relief South Mill seeks—trust enforcement without notice to Defendants—is truly extraordinary. Under case law, federal rules, and local rules, South Mill had to make a strong and clear showing that it would suffer irreparable harm without immediate ex parte relief. As the following discussion of the *Winter* factors makes clear, South Mill missed this mark by a wide margin.

**B.  TRO Application**

South Mill seeks a temporary restraining order enjoining Defendants from dissipating trust assets. But South Mill fails to satisfy the requirements for such relief. As indicated in *Cottrell*, if a party altogether fails to show irreparable harm, its TRO application must be denied, regardless of the other factors. 632 F.3d at 1135; *Winter*, 555 U.S. at 20. Here, South Mill has shown no irreparable harm at all, and accordingly, the Court denies South Mill's application without addressing the other factors.

In support of its claim of irreparable harm, South Mill argues that the trust assets are at risk of dissipation, and that it will suffer irreparable harm if the Court does not issue an injunction enforcing the trust. (Appl. TRO 6–7.) This argument has two principal flaws.

First, South Mill has failed to make a substantial showing that the trust assets are at risk of dissipation. As evidence of dissipation, South Mill submits a single email from Defendant Christopher Martin, V.I.P.'s principal:

> As you may now know Gabe is going to move on to a different company... I have said that I will be paying the debt to everyone, especially South Mill[]. . . . I am currently restructuring our company & I am in the middle of selling a personal property so that I will make a lump sum payment... I tried to come up with different ideas & formulas so that I could make this work for everyone, including keeping the mushroom department, but now that isn't going to happen. I will ask for a few weeks to get my finances in order & will be paying off the VIP

> debt with some personal funds. . . . I will make good on this, but I just ask for a little time to do so
>
> I'll be in touch to let you guys about the payments as soon as we get close to the escrow date. . . .
>
> Thank you.

(Wilson Decl. ¶ 26.) Based on this single email, South Mill asserts that V.I.P. has failed to maintain sufficient PACA Trust assets.

South Mill's showing is wholly insufficient to demonstrate that trust assets are or risk being dissipated. The email says nothing about the whereabouts of the mushrooms or the proceeds therefrom. The email also says nothing about V.I.P.'s or the other Defendants' ability to pay. Indeed, South Mill's ex parte papers are generally devoid of any indication of exactly what type of dissipation South Mill fears. The Court cannot say that South Mill has made the required strong showing of dissipation when South Mill failed to take the foundational step of specifying exactly what kind of dissipation it fears. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159, n.8 (11th Cir. 1990) (instructing district courts to enforce PACA trusts only "[u]pon a showing that the trust is being dissipated or threatened with dissipation"); *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.")

Moreover, even if South Mill could demonstrate dissipation, the question here is whether South Mill's harm is *irreparable*, that is, whether South Mill has an adequate remedy at law. Where the harm arises from nonpayment, as here, South Mill can be made completely whole with money damages. *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) ("Where . . . a plaintiff can seek money damages if she prevails on claims for breach of contract . . . she has an adequate remedy at law.") Thus, the dissipation of trust assets threatens irreparable harm only if there is an additional showing that Defendants are insolvent.

South Mill does not make this showing. South Mill relies on only two pieces of evidence: the above email, along with an additional assertion that Defendant Jesse Martin and "another business partner" are soon to retire. (Wilson Decl. ¶ 25.) But the mere fact a person is retiring from a company says nothing about that company's financial state. Thus, South Mill fails to show that any defendant is insolvent or that an award of money damages will otherwise be inadequate to make South Mill whole. Indeed, Christopher Martin's email indicates exactly the opposite: that Defendants are solvent and intend to pay the debt.

Because South Mill makes no showing of irreparable harm, immediate injunctive relief is inappropriate, and the Court need not consider the remaining *Winter* factors. Accordingly, the Court **DENIES** South Mill's TRO Application. South Mill's Motion for Preliminary Injunction is also ex parte and is judged by the same legal standard, and the court **DENIES** that motion as well.

### IV.   CONCLUSION

For the foregoing reasons, the Court finds that South Mill has not met the high burden of establishing that it is entitled to injunctive relief without notice to Defendants. Accordingly, the Court **DENIES** South Mill's ex parte Application for a Temporary Restraining Order (ECF No. 12). The Court also **DENIES** South Mill's ex parte Motion for Preliminary Injunction (ECF No. 14), without prejudice to renewing the Motion with proper notice.

**IT IS SO ORDERED.**

September 10, 2021

                                                                 _____
                                                                          **OTIS D. WRIGHT, II**
                                                                 **UNITED STATES DISTRICT JUDGE**